LYNNE C. HERMLE (STATE BAR NO. 99779)
JESSICA R. PERRY (STATE BAR NO. 209321)
JULIA C. RIECHERT (STATE BAR NO. 254078)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     650-614-7400
Facsimile:     650-614-7401
lchermle@orrick.com
jperry@orrick.com
jriechert@orrick.com

Attorneys for Defendant
GAP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIENNA HOWARD, individually and on behalf of all similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>GAP INC., ,<br><br>    Defendant. | Case No.  C 06 6773 WHA<br><br>**DEFENDANT GAP INC.'S OBJECTIONS TO EVIDENCE AND MOTION TO STRIKE EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:          November 5, 2009<br>Time:          8:00 am<br>Courtroom:  9<br>Judge:        The Hon. William Alsup |

## I.      **INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 26(e) and (g), and 56(e), defendant Gap, Inc. hereby objects to the defective evidence presented by Plaintiff Dienna Howard in support of her Motion for Class Certification ("Motion").  As is discussed herein, the Court should strike the declarations of  Esmerelda Maldonaldo (sic), Jenae German, and Dawn Gaffey because Plaintiff never complied with her disclosure obligations under Federal Rule of Civil Procedure 26(a) (and this Court's stern admonishments mandating full compliance).  Moreover, Plaintiff's declaration, her supporting declarations, and the other evidence on which she seeks to rely is riddled with serious evidentiary defects.  None of the declarants establishes a proper foundation for the sweeping, overbroad allegations in their declarations, which are clearly outside of the declarants' personal knowledge.[1]  Accordingly, the declarations violate the most basic evidentiary principle – that an adequate foundational showing must be made as to the declarants' personal knowledge of asserted facts before evidence may be admitted.  Additionally, Plaintiff's deposition emphasized clearly why the rules of evidence require an adequate foundation: her admissions confirm that many of the statements in her declaration were made without any personal knowledge or foundation whatsoever, and are based solely on speculation.

As shown below, because Plaintiff's evidence fails to meet the requirements of admissibility under Federal Rule of Civil Procedure 56(e) and the Federal Rules of Evidence, it should be stricken.  *FDIC v. New Hampshire Ins.*, 953 F.2d 478, 484 (9th Cir. 1992) (defects in declarations or other evidence which are not admissible may be stricken).

## II.     **GENERAL OBJECTIONS TO EVIDENCE**

### A.      **Plaintiff's Declarations Should be Stricken for Her Failure to Comply with the Provisions of Fed. R. Civ. Proc. 26**

The Court simply could not have been clearer with the parties about the need to comply conscientiously with the disclosure requirements of Rule 26(a).  In not one but two hearings,

---

[1] In addition, Plaintiff's witnesses are not able to identify the *years* they worked at Gap (2003 vs. "2006"); the amount of time they worked for Gap (weeks vs. months); or even the spelling of either their first or last names.  *See infra* at pp. 6-8.

including following the hearing on the motion to dismiss on April 26, 2007, the Court admonished both parties regarding the need to comply strictly with the disclosure requirements, and emphasized that failure to do so would result in the striking of evidence or claims unless there was substantial justification for that failure.[2]

Those requirements, of course, expressly include the requirement that a party provide the name and contact number for "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims." Here, Plaintiff failed to comply either timely or substantively with the requirement.

First, Plaintiff provided wholly deficient initial disclosures on March 5, 2007, failing to even specify herself as a person with knowledge. *See* Declaration of Lynne C. Hermle in Opposition to Motion for Certification and in Support of Motion to Strike and Objections to Evidence ("Hermle"), Ex. 8.  Instead, she vaguely identified as knowledgeable individuals "all employees of Gap Inc. stores," and stated only that her unspecified and unidentified "co-workers and managers" have knowledge of the policy and requirement at issue. *Id*.  She was apparently unaware of relevant documents—including the dress code policies—and provided no specification of damages.  She sought only unspecified "reimbursement for required clothing purchases." *Id*.  Because the case was dismissed by the District Court soon thereafter, the disclosures were not then a matter of controversy.  Hermle ¶22.

However, the case was reinstated in March 2009.  The Court then ordered complete initial disclosures to be completed by April 30, 2009 and sternly emphasized the need for compliance. Plaintiff, however, failed to comply or produce *any* disclosures by that April 30 date. *See* Hermle ¶23; *see also* Case Management Order on Remand and Reference to Magistrate Judge for Mediation/Settlement, Docket No. 59, filed April 24, 2009..  Having received no disclosures, Gap sent a letter demanding compliance. *See* Hermle Ex. 9.  Plaintiff then submitted amended disclosures on June 29, 2009, two months late, identifying only Plaintiff, again "all employees of Gap Inc," and her unspecified "co-workers and managers" as persons with knowledge.  Hermle

---

[2] The Court offered the parties the option of opting out of these requirements, and both parties affirmatively chose not to do so.

1    Ex. 10.

2          Such a blanket designation (already untimely) is insufficient to comply with Rule

3    26(a)(1).  *Watts v. Healthdyne, Inc.*, 1995 U.S. Dist. LEXIS 9818, at *2 (D. Kan. 1995) (rejecting

4    argument that initial disclosure designating "all present and former employees' of defendants"

5    was sufficient).  Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures

6    "in a timely manner" when the prior response is "incomplete or incorrect."  *Hoffman v.*

7    *Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).  Plaintiff never

8    amended her disclosures to identify any of her witnesses, including declarants Gaffey,

9    Maldonado, and German—even though both Maldonado and German had signed their

10   declarations weeks before the filing.[3]  *Sepulveda v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS

11   59056, at *10 (C.D. Cal. 2006) (plaintiffs' identification of "current and former assistant

12   managers" insufficient; plaintiffs improperly failed to disclose names of individual declarants

13   once they became known to plaintiffs prior to motion for class certification); Declaration of

14   Esmerelda Maldonaldo (sic) p. 4 (signed September 17, 2009); Declaration of Jenae German p. 3

15   (signed September 18, 2009).

16         Rule 37 forbids the use at trial or on a motion of any information required to be disclosed

17   by Rule 26(a) that is not properly disclosed.  *Yeti By Molly, Ltc. v. Deckers Outdoor Corp.*, 259

18   F.3d 1101, 1106 (9th Cir. 2001).  Rule 37 provides a "self-executing," "automatic" sanction to

19   "provide a strong inducement for disclosure of material..." *Id.* (citing Fed. R. Civ. P. 37 advisory

20   committee's note (1993)).  Courts have upheld the use of the sanction even when a litigant's

21   entire cause of action or defense has been precluded.  *Id.*

22         Plaintiff's failure to identify declarants Gaffey, Maldonado, and German is neither

23   substantially justified nor harmless.  Plaintiff failed to disclose the identity of her witnesses once

24   they became known to her, either by amending her initial disclosures or in another setting.  In

25   fact, at her September 17, 2009 deposition, Plaintiff testified that she knew of no one else who

26   had information about her claims.  Declaration of Jessica R. Perry in Opposition to Motion for

27

28   _____
     [3] Despite counsel's promise to file a signed declaration last week, Gaffey apparently still has not
     signed her declaration affirming that she has read it.

1   Certification and in Support of Motion to Strike and Objections to Evidence ("Perry"), Ex. 2,

2   Plaintiff Depo., 26:23-27:1).  However, that very day, one of her declarants executed one of the

3   three declarations she submitted with her motion, with another executing a the second of the three

4   declarations the following day.  *See* Declaration of Esmerelda Maldonaldo (sic) p. 4 (signed

5   September 17, 2009); Declaration of Jenae German p. 3 (signed September 18, 2009).  For the

6   next two weeks, Plaintiff continued to fail to disclose the existence of the witnesses, let alone any

7   contact information, despite that Plaintiff's counsel expressly contended to represent at least one

8   of them.  *See* Perry ¶36.

9        Given the Court's repeated admonishments, Plaintiff simply could not have

10  misunderstood the ramifications of her failure to comply with the disclosure requirements.

11  Accordingly, Gap moves to strike the declarations of Gaffey, Maldonado, and German.

12  "Exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of

13  Rule 26(a)."  *Yeti*, 259 F.3d at 1106.

14       **B.   Gap Objects to and Moves to Strike the Declarations Submitted by Plaintiff
              and the Declarants**

15

16            **1.   Plaintiff's Declarations Suffer from Lack of Foundation and Lack of
                     Personal Knowledge (Objection 1)**

17       Pursuant to Federal Rule of Evidence 602, declarations must set forth facts within the

18  personal knowledge of the declarant.  *Thornhill Publishing Co. v. GTE Corp.*, 594  F.2d 730, 738

19  (9th Cir. 1979) (affidavit must set forth specific facts within declarant's personal knowledge).

20  Pursuant to Federal Rule of Civil Procedure 56(e), an affidavit must be made on personal

21  knowledge, set out facts that would be admissible in evidence, and show that the affiant is

22  competent to testify on the matters stated.  Accordingly, testimony must be excluded unless the

23  witness had an opportunity to observe, and actually observed, the fact.  *United States v. Lyon*, 567

24  F.2d 777, 783 (8th Cir. 1977), *cert. denied*, 435 U.S. 918 (1978); *see also Latman v. Burdette*,

25  2004 U.S. App. LEXIS 11212, *26-27 (9th Cir. 2004).

26       As noted in further detail in Defendant's Specific Objections below, the declarations

27  submitted by Plaintiff and three other former Sales Associates contain statements for which the

28  declarants did not observe, or had no opportunity to observe, the asserted facts.  Plaintiff and the

DEFENDANT'S OBJECTIONS TO EVIDENCE AND MOTION TO
STRIKE EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION C 06 6773 WHA

1    other declarants claim to be able to speak knowledgeably about the experiences of other

2    individuals employed by Gap throughout the State of New York, during a purported class period

3    that currently spans nine years, from October 31, 2000 through the present. *See* Plaintiff's Notice

4    of Motion, Motion For Class Certification, and Memorandum of Points and Authorities In

5    Support ("Plf's Mem.") p. 4, lines 13-16).  However, Plaintiff's deposition testimony and the

6    employment records of the declarants soundly reject such a claim.

7       On July 8, 2002, Plaintiff was hired as a part-time sales associate at the Gap store at the

8    McKinley Mall in Blasdell, New York, a suburb of Buffalo (Perry Exs. 2, 25; 39:1-22).  Plaintiff

9    worked only four shifts over the course of four different days during a three week period of time.

10   *Id.* Ex. 28.  After working a total of 12.75 hours, she quit her job with Gap, in part because she

11   believed her co-workers were "fake" (*Id.* Exs. 2, 25; 114:2-116:13).  The alleged disingenuous

12   character of Plaintiff's coworkers would undermine Plaintiff's claim to possess personal

13   knowledge of their experiences with Gap's dress code, but for Plaintiff's admission that she had

14   no communications with co-workers about the dress code besides one brief conversation with an

15   unnamed co-worker (79:7-11).  She further admits that the only communication that she had with

16   any manager about the dress code occurred during her orientation on her first day of work,

17   (79:16-80:9), with a manager whose name she cannot recall (41:10-13).[4]  Indeed, Plaintiff cannot

18   remember the names of any of her managers at the McKinley Mall store or any other manager at

19   the company (41:10-13; 41:14-16; 70:8-17), and never spoke to any other Gap manager about the

20   dress code (79:16-19).  She further admits she not know what any other person was told about the

21   dress code; does not did not know whether other Sales Associates were wearing Gap clothes,

22   (81:7-15); never saw employees spoken to about their attire or disciplined for their clothing

23   (81:16-23); is not aware of any employee complaining about the dress code ( 81:24-82:1); and

24   knows no one else who would have information about her claims in this lawsuit (26:23-27:1).

25       Plaintiff has never seen and is not aware of the other 13 versions of the dress code

26

---

27   [4] Though Plaintiff claims the unnamed manager told her she had to wear current Gap clothing, the
General Manager of the McKinley Mall Gap, who conducted Plaintiff's orientation training,

28   states that she never told Plaintiff she was required to wear or purchase Gap (Mullin ¶ 5).

1   applicable during the purported class period (68:23-69:6); has never worked at another Gap store

2   (69:10-70:7); has no knowledge of how any other Gap manager implemented and enforced the

3   dress code (112:25-113:7); and is not aware of other employees subject to the same alleged

4   instruction (113:17-114:1).

5       Even if Plaintiff's admittedly sparse memories of her Gap employment are given

6   credence, Plaintiff is only knowledgeable about her own personal experiences at Gap during a

7   three week, twelve hour period of employment at one store location.  Plaintiff submits three other

8   declarations in support of her Motion, all betraying a lack of foundation or personal knowledge in

9   relation to the allegations within.  The other declarants were employed for similarly brief periods

10  of time as Sales Associates at single store locations (and do not even have accurate personal

11  knowledge of their own stints of employment).

12      Esmeralda Maldonado (she incorrectly spells her name as Esmerelda Maldonaldo in her

13  declaration) claims she was a full-time Sales Associate earning minimum wage for several

14  months in approximately 2006 at the Oceanside Gap on Long Island.  *See* Declaration of

15  Esmerelda Maldonaldo (sic) ("Maldonado"), ¶2.  However, Gap records show Maldonado was

16  employed at the Oceanside Gap store for about two and a half weeks in June of 2003.

17  Declaration of Catherine Geerhart in Opposition to Motion for Class Certification and in Support

18  of Objections to Evidence and Motion to Strike ("Geerhart"), Ex. F.  Maldonado was hired on

19  June 6, 2003 and worked only three shifts at Gap, for a total of 15.25 hours.  *Id*. Exs. F, G.  Her

20  last day of work was June 18, 2003, 12 days after she started.  Geerhart Ex G.  Maldonado was a

21  part-time employee earning $7.50 per hour, significantly higher than the then-minimum wage of

22  $5.15 per hour in New York.  Geerhart Ex. F.  On June 6, 2003, Maldonado acknowledged that

23  she read, understood, and agreed to comply with the Gap Store Dress Code policy, which allowed

24  employees to wear non-Gap merchandise.  *Id.* Ex. E.  Maldonado claims that "the inventory

25  changed regularly, I do not recall how often, but we had to purchase new clothes to keep up with

26  the "current" merchandise in the store whenever the inventory changed."  Maldonado ¶3.

27  Maldonado further claimed that she had to take money out of savings to make her first purchase

28  of clothes, and thereafter paid for her clothing out of her Gap wages.  *Id.* ¶5.  However,

1   Maldonado's purchase records show that she only made one purchase during her employment at

2   Gap, on June 16, 2003.  Declaration of Lora Peralta in Opposition to Motion for Class

3   Certification and in Support of Objections to Evidence and Motion to Strike ("Peralta"), ¶11, Ex.

4   A.  Given that Maldonado only made one purchase she surely wasn't making purchases to keep

5   up with inventory changes (which likely didn't even change at all during the 12 days of her

6   employment).  Moreover, two of the five items she bought were on sale and therefore were not

7   "current" items of merchandise according to her theory.  *Id.*  At the time Maldonado made her

8   only purchase on June 16, 2003, she had not earned enough in wages to cover her purchase, and

9   therefore used funds other than her wages to purchase Gap merchandise.  Geerhart Ex. H; Peralta

10  Ex. A.  As she only made one purchase, Maldonado did not use her wages to make any

11  subsequent purchases at Gap, as she claims in her declaration.  Gap terminated Maldonado's

12  employment for job abandonment on June 23, 2003.  Geerhart Ex. F.

13          Dawn Gaffey claims she was a part-time, seasonal Sales Associate at Gap's 5th Avenue

14  store during the holiday season in approximately 2003, earning slightly more than minimum

15  wage.  Declaration of Dawn Gaffey ("Gaffey"), ¶2.  She also claims that she left her position after

16  a "couple of months."  *Id.* ¶5.  In fact, Gaffey worked at the Gap store on 17th Street and 5th

17  Avenue for 12 days during the 2002 holiday season.  Geerhart Exs. B, C.  Gaffey earned $9.00

18  per hour, over one and a half times the then-minimum wage of $5.15 per hour in New York.  *Id.*

19  Ex. B.  In her application, Gaffey wrote that she wanted to work at Gap because "not only do ***I***

20  ***love wearing Gap clothing***, I enjoy the energy I feel when I walk into a Gap store.  The customer

21  service is excellent and the diversity of the employees is amazing."  *Id.* Ex. A (emphasis added).

22  Gaffey was hired on December 14, 2002 and worked her last shift on December 26, 2002, the day

23  after Christmas.  *Id.* Exs. B, C.  Overall, Gaffey worked 7 shifts over 12 days leading up to the

24  Christmas holidays.  *Id.* Ex. C.  During that time, Gaffey made nine purchases and one return, and

25  eight of her nine purchases were on days leading up to the Christmas holidays.  Peralta ¶11, Ex.

26  B.  Twice, according to Gap's purchase records, Gaffey came in on days she was not scheduled to

27  work to make purchases with her employee discount.  Geerhart Ex. C; Peralta Ex. B.  By virtue of

28  having made six of her nine purchases before she received her first paycheck, Gaffey used funds

DEFENDANT'S OBJECTIONS TO EVIDENCE AND MOTION TO
STRIKE EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION C 06 6773 WHA

1    other than her wages for the majority of her purchases.  Geerhart Ex. D; Peralta Ex. B.  Gaffey

2    claims that she "had to wear current items from the current season" because "Gap wanted

3    employees to model the clothes for customers."  Gaffey ¶3.  However, Gaffey purchased only two

4    items of "current" merchandise.  Peralta ¶11, Ex. B.  Not counting the three items she returned,

5    16 of the 18 items Gaffey purchased were sale items (designated by a unit price ending in .99).

6    *Id.*  The three items Gaffey returned were also sale items.  *Id.*  Gap terminated Gaffey's

7    employment for job abandonment on January 18, 2003.  Geerhart Ex. B.  Gaffey claims in her

8    declaration that she is "fairly certain that [she] spent more money on clothes that [she] made at

9    the Gap."  Gaffey ¶5.  This is wrong.  In fact, Gaffey earned significantly more in wages than she

10   spent on Gap clothes (just over double).  Geerhart Ex. D; Peralta Ex. B.

11        Jenae German claims she was a full-time Sales Associate earning minimum wage from

12   July 2003 through May 2004 at the Green Acres Mall Gap in Queens, New York.  Declaration of

13   Jenae German ("German"), ¶2.  In fact, German was employed at the Green Acres Mall Gap for

14   about seven and a half months, not the 10 months she claims.  Geerhart Ex. K.  German was hired

15   on September 6, 2003 and worked her last shift on March 27, 2004, when she worked for one

16   hour.  *Id.* Ex. L.  She was a part-time employee earning $7.00 per hour, higher than the then-

17   minimum wage of $5.15 per hour in New York.  *Id.* Ex. K.  On September 6, 2003, German

18   acknowledged that she read and agreed to uphold Gap's dress code and employee appearance

19   guidelines, including the provision allowing her to wear "Gap-like" merchandise.  *Id.* Ex. I.  In

20   her declaration, German claims she "regularly purchased new clothes to match the "current"

21   items in the store," and spent "most of [her] pay checks on Gap clothing."  German ¶4.  She also

22   claims she purchased a pair of pants from Gap after her manager spoke to her about non-Gap

23   jeans she wore to work.  *Id.* ¶3.  But Gap's purchase records show that German made ***no***

24   ***purchases*** whatsoever during her employment at Gap.  Peralta ¶11.  On December 18, 2003,

25   German was placed on corrective action when, after her managers had already spoken with her

26   about taking long rest breaks, she took another extended break.  Geerhart Ex. J.  German was still

27   on corrective action when she abandoned her job in March 2004.  *Id.* Exs. J-L.  Gap officially

28   terminated her employment for job abandonment on April 20, 2004.  *Id.* Ex. K.

Given their short tenures of employment, Plaintiff and the other declarants lack the personal knowledge to make broad, general statements about the experiences of other non-exempt Gap employees throughout the State of New York during at least a nine year period of time. They have not established – as they must – that they have any personal knowledge of the "facts" alleged in their declarations in relation to other Gap employees, and cannot establish the foundation for which they believe these so-called facts to be true. The failures of Plaintiff and her supporting declarants to establish a foundation for these and other statements render their testimony inadmissible. For these reasons, Plaintiff's evidence cited in Section III, Specific Objections, must be stricken for lack of foundation and lack of personal knowledge.

## 2. The Declarations of Plaintiff and Her Declarants Contains Vague, Overbroad, Conclusory and Speculative Statements (Objection 2)

Vague, conclusory and speculative testimony is improper and should not be considered by the Court. *National Steel Corp. v. Golden Eagles Ins. Corp.*, 121 F.3d 496, 502 (9th Cir. 1997). Accordingly, this Court has adopted the rule that "declarations may contain only facts… and must avoid conclusions…." Northern District of California, Civil Local Rules, Rule 7-5; *see also Far Out Prods. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (holding that trial court properly disregarded declarations that failed to present any specific facts), *and United States v. Nissan Van 1987*, 1994 U.S. App. LEXIS 37052, *8 (9th Cir. 1994) (holding that trial court properly disregarded declaration that set forth conclusory allegations without factual support).

Plaintiff's declaration and the supporting declarations, as cited below in Section III, Specific Objections, contain allegations pertaining to the purpose of Gap's dress code, and its application to other Gap employees, that are vague, conclusory, speculative and overbroad. Plaintiff worked for Gap for just 12.75 hours over the course of four shifts during a three week period of time in one store seven years ago. Perry Ex. 25. She admitted she does not have any knowledge of the other 13 versions of the dress code applicable during the purported class period (Perry Ex. 2; 68:23-69:6); has no knowledge of how any other Gap manager implemented and enforced the dress code (112:25-113:7); is not aware of other employees subject to the same alleged instruction (113:17-114:1); does not know whether other Sales Associates followed the

1  same alleged instruction ( 81:7-15); never saw employees spoken to about their attire or

2  disciplined for their clothing ( 81:16-23); and is not aware of any employee complaining about

3  the dress code (81:24-82:1).  She has no basis on which to speculate as to the experiences of other

4  putative class members.[5]

5       Likewise, Plaintiff's declarants worked for short periods at single stores.  Maldonado

6  worked only three shifts over 12 days at the Gap store in Oceanside, New York, Gaffey worked

7  seven shifts over 12 days at the Gap store on 17th Street and 5th Avenue in New York, New York

8  and German worked for about seven and a half months at the Green Acres Mall Gap in Queens,

9  New York.  Altogether, Plaintiff's declarants worked for Gap for less than ten months, and none

10  of Plaintiff's declarants worked after March 2004.

11       Plaintiff alleges that Gap operates 75 to 80 stores in the State of New York.  Plf's Mem.,

12  p.4, lines 21-23.  Gap provided Plaintiff's counsel with contact information for over 3,700 Sales

13  Associates employed by Gap in New York during the purported class period.  Perry Ex. 34.  Out

14  of this, Plaintiff submits declarations from herself and three other former Sales Associates, who

15  worked at four stores for brief periods of time (and are unreliable for many reasons, as stated

16  above and below).  Plaintiff failed to submit declarations from any other category of non-exempt

17  Gap employee included in the purported class.  This failure is significant, because other non-

18  exempt employees besides Sales Associates are included in the purported class, are subject to

19  Gap's dress code, and are responsible for interpreting and applying Gap's dress code.

20       Plaintiff's evidence cited in Section III, Specific Objections, which is used in a vague,

21  conclusory, overbroad and speculative manner, must be stricken.

22       **3.      The Statements in Plaintiff's Declaration That Contradict her
               Deposition Testimony Must Be Stricken (Objection 3)**

23

24       The Court must disregard supporting declarations "where the declarations are expressly

25  _____

   [5] In fact, contrary to Plaintiff's allegation that she and other employees were required to wear
26  current Gap clothing at the McKinley Mall Gap, numerous employees from the McKinley Mall
   Gap state that managers <u>never</u> required employees to wear or purchase Gap clothing, including
27  during the brief time period when Plaintiff worked at Gap.  Mullin ¶3, 7 (GM when Plaintiff
   there); Doster ¶3, 4 (manager when Plaintiff there); Rindfuss ¶4, 5, 8 (manager when Plaintiff
28  there); Jones ¶4; Dommer ¶ 6; Portka ¶5, 7.

contradicted by deposition testimony without explanation[.]"  *Evans v. IAC/Interactive Corp.*, No.

8: 05-CV-1104 DSF (CWx), 2007 WL 2350113, *1 (C.D. Cal. Apr. 25, 2007).  As in Plaintiff's

case, plaintiffs' sworn depositions in *Evans* had "numerous and substantial discrepancies" with

their declarations.  *Id.* at 1.  The most egregious example of such discrepancies was when "the

Plaintiff Evans admitted [in his deposition] that he had *no knowledge* of certain information

contained in his declaration."  *Id.*  In light of the many inconsistencies, the *Evans* court concluded

that the declarations had statements that were either "admittedly false, that were simply made up

by the declarant, or for which the declarants lacked actual knowledge."  *Id.* at 10.  The *Evans*

court therefore disregarded the plaintiffs' declarations to the extent they contradicted their

deposition testimony.  *Id.* at 1 ("where the declarations are expressly contradicted by deposition

testimony without explanation, the deposition testimony will control"); *cf. Radobenko v.*

*Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (disregarding declarations that

contradicted deposition testimony in summary judgment); *Foster v. Arcata Associates*, 772 F.2d

1453, 1462 (9th Cir. 1985) (same).

      Here, just as in *Evans*, a comparison of Plaintiff's declaration with her deposition

testimony "reveals numerous and substantial discrepancies."  2007 WL 2350113 at *1.  Here, as

in *Evans*, Plaintiff "admitted that [she] had *no knowledge* of certain information contained in [her]

declaration."  *Id.*  at *1.  Despite the allegation in Plaintiff's declaration that other Gap employees

purchased and wore Gap clothing because they were required to do so, Plaintiff testified that she

had no communications with co-workers about the dress code except one brief conversation with

an unnamed co-worker (79:7-11).[6]  Furthermore, she did not know whether other Sales

Associates were wearing Gap (81:7-15); never saw employees spoken to about their attire or

disciplined for their clothing (81:16-23); is not aware of any employee complaining about the

dress code (81:24-82:1); and knows **_no one else_** who would have information about her claims in

_____

[6] Plaintiff testified that on July 9, 2002, she asked a male co-worker what the point of the dress
code was and he responded he did not understand it either, to which she nodded her head in
agreement.  That was the full extent of the conversation and they had no further discussions on
the topic (74:16-75:25).  This hardly constitutes a discussion with another Gap employee about
being required to wear Gap clothing; thus Plaintiff has had **_no_** conversations with any of the over
40,000 people she seeks to represent about being required to wear Gap (26:23-27:1; 79:7-11).

1   this lawsuit (26:23-27:1).

2          Plaintiff also made admissions that show this statement is not even true about her.

3   Plaintiff admitted that she understood nothing in the language of the written dress code as

4   requiring employees to wear Gap clothing (64:4-65:21).  Plaintiff did not ask any questions about

5   the dress code or the instruction she allegedly received from her manager, despite that the alleged

6   instruction was contrary to Gap's written dress code, which Plaintiff had in front of her during the

7   orientation (67:4-68:22).  Plaintiff did not wear any Gap clothing during either her first or second

8   day of work (74:1-8; 94:7-18), yet she testified that ***no one*** ever discussed her clothing with her,

9   commented on her outfits, told her she was dressed inappropriately, told her she was out of dress

10  code, or disciplined her during her during her brief employment with Gap (72:21-25; 80:13-81:2).

11         Plaintiff's allegation that she purchased Gap clothing as a result of instruction from her

12  manager is contradicted by her deposition testimony.  Despite this allegation, Plaintiff testified

13  that she purchased Gap clothing prior to being employed by Gap (36:14-25), and that she didn't

14  consider the Gap discount to be a benefit to her, because ***she would have purchased Gap clothing***

15  ***regardless of the discount*** (49:11-20).  Plaintiff wore the t-shirts she purchased while working for

16  Gap "numerous" times after her employment ended (105:6-10), never wore some of purchases to

17  work at all (98:18-21), and purchased clothing she thought was fashionable and could wear

18  outside of work (100:17-19; 101:1-3).  Moreover, when she quit her job after four short shifts,

19  Plaintiff never sought to return the clothing she was allegedly forced to buy, some of which she

20  never even wore to work (98:18-21; 102:5-7).  Plaintiff spent $88.54, all paid in cash, on the Gap

21  purchases that were allegedly the result of her manager's instructions, which was more than she

22  ever earned at Gap (Perry Exs. 2 (92:2-97:21, 97:16-98:2), 29-31), and she admits that Gap did

23  not take any wages out of her paycheck for her clothing purchases (99:15-100:4).  Plaintiff

24  continued to shop at Gap and purchase clothing following her employment, (101:14-17; 105:11-

25  22; 106:11-13; 108:11-25), purchasing more clothing from Gap in one shopping trip in July 2009

26  than she purchased during her entire employment in 2002 (Perry, Exs. 2 (106:25-108:6), 32).

27         For these reasons, this Court should disregard Plaintiff's evidence as cited in Section III,

28  Specific Objections.

**4.**   **The Unreliable Declarations Submitted By Disgruntled Former Employees of Gap Should Be Excluded (Objection 4)**

This Court should lend no weight to Plaintiff's declaration and Gaffey and German's supporting declarations, as these declarants have apparent axes to grind with Gap, making their declarations unreliable.  *See, e.g.*, *Tolbert v. Western Elec. Co.*, 56 F.R.D. 108, 114 (N.D. Ga. 1972) (articulating a concern that "a disgruntled employee ... may discover a weapon of revenge in the form of a major class action suit") (quotations omitted); *Lim v. Citizens Sav. & Loan Ass'n*, 430 F. Supp. 802, 810 (N.D. Cal. 1976) (noting  "primarily personal" nature of plaintiffs' allegations demonstrated by failure to make prima facie showing of class and by allegations themselves).

Plaintiff worked for Gap for a total of 12.75 hours before quitting because her car broke down and she thought that "the manager and the girl who trained us," as well as "some of the employees," were "fake," *i.e.* "[c]ondescending, snotty and rude." Perry Exs. 2 (114:6-17), 28. Declarant Gaffey alleges that she "got into trouble" for not complying with Gap's dress code, she was "frustrated" by the dress code, and that she quit working for Gap because her shifts were reduced to three hours, for reasons not stated in her declaration.  Gaffey ¶¶4-5.  In fact, Gaffey worked for a period of 12 days leading up to Christmas, making repeated purchases, including on days she did not work, and then abruptly stopped coming to work the day after Christmas. Geerhart Ex. C; Peralta Ex. B.  She was terminated for job abandonment on January 18, 2003. Geerhart Ex. B.  German was placed on corrective action for failing to comply with Gap's break policy and was also terminated for job abandonment shortly thereafter.  Geerhart Exs. J, K.

The purported class representative and the other declarants left Gap on bad terms and likely harbor bias against Gap, rendering their declarations unreliable.  Plaintiff's evidence cited in Section III, Specific Objections, for unreliability, must be stricken.

**5.**   **Relevance (Objection 5)**

Pursuant to Federal Rule of Evidence 401, relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than otherwise it would be.  Evidence which is not relevant is not

- 13 -

1   admissible.  Fed. R. Evid. 402.

2         Plaintiff is only knowledgeable about her own personal experiences at Gap during an

3   extremely brief period of employment at one store location.  Plaintiff submits three other

4   declarations in support of her Motion, and all three declarants were employed for similarly brief

5   periods of time as Sales Associates at single store locations.  Plaintiff's purported class now

6   includes all non-exempt Gap employees, not only Sales Associates, who were employed by Gap

7   between October 31, 2000 and the present at 75 to 80 stores.  As a result, the perceptions of

8   Plaintiff and the other declarants are irrelevant to any purported experiences of other purported

9   class members.  Plaintiff's evidence cited in Section III, Specific Objections, for lack of

10  relevance, must be stricken.

11              **6.        Hearsay (Objection 6)**

12        Pursuant to Federal Rule of Evidence 802, hearsay is not admissible except as provided by

13  exceptions in the Federal Rules of Evidence and other rules of court prescribed by the Supreme

14  Court.  The evidence cited in Section III, Specific Objections, for hearsay, must be stricken.

15              **7.        Lay Opinion (Objection 7)**

16        Federal Rules of Evidence 701 and 702 prohibit admission of statements of legal opinion

17  or legal conclusions.  *United States v. Hearst*, 563 F.2d 1331, 1351 (9th Cir. 1977) (holding that a

18  statement is an inadmissible legal opinion where it uses terminology, "the meaning of which is

19  not reasonably clear to laymen").  The rationale is that bare legal conclusions are not helpful to

20  the jury.  *Torres v. Oakland County*, 758 F.2d 147, 150 (6th Cir. 1985) ("testimony offering

21  nothing more than a legal conclusion – *i.e.,* testimony that does little more than tell the jury what

22  result to reach – is properly excludable").  This is especially true for testimony that has "a

23  separate, distinct and specialized meaning in the law different from that present in the

24  vernacular."  *Id*. at 151; *see also Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("a

25  district court abuses its discretion when it allows a witness to define legal terms, especially terms

26  that carry a considerable amount of legal baggage").

27        As noted in further detail in Defendant's Specific Objections, the declarations submitted

28  here in support of Plaintiff's Motion contain statements that include distinct and specialized legal

- 14 -

1   meanings.  The evidence cited in Section III, Specific Objections, for lay opinion, must be

2   stricken.

3   **III.      SPECIFIC OBJECTIONS TO EVIDENCE**

4          **A.      Declaration of Jenae German**

5

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 1.      **German, Page 1, lines 17-18, ¶1:**<br><br>"I am over the age of majority and competent to testify.  I have personal knowledge of these facts." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 7: Lay Opinion.**<br><br>The declarant's allegation that she is competent to testify relies upon a distinct and specialized legal meaning, and is a conclusion of law that is undermined by her lack of personal knowledge or foundation for her testimony about other Gap employees. |
| 2.      **German, Page 1, lines 19-23, ¶2:**<br><br>"I was employed at the Gap as a sales associate from July 2003 through May 2004.  I worked at the Gap's Valley Stream store at the Green Acres Mall in Queens, New York.  I worked as a sales associate.  I worked full-time for the Gap and earned minimum wage." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 5:  Relevance.**<br><br>The declarant apparently has no foundation or personal knowledge of these statements.  Instead, she worked for Gap from September 6, 2003 through April 20, 2004, a period of approximately 7.5 months.  Geerhart Ex. K. Further, Gap's records indicate German was a part-time employee earning $7.00 per hour, more than the then-minimum wage of $5.15 per hour in New York.  *Id.* |
| 3.      **German, Page 1, line 24 – page 2, line 15, ¶3:**<br><br>"When I worked at the Gap, employees were required to purchase Gap clothes to wear to work.  During our orientation and the hiring process, the store manager told us that she 'preferred' if we wear Gap clothes to work, and that we had to wear clothes that looked the same as the clothing that the Gap was currently selling in the store.  However, whenever an employee wore anything other than Gap clothing, the manager had a problem with it and the employee was either sent home or was required to purchase something from the store to wear.  On one occasion at the start of my | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.**<br><br>In addition to the above-recited objections, German fails to provide any evidence to corroborate her alleged purchases of Gap clothing, and, in fact, Gap's purchase records show that *German made no purchases from Gap during her employment*. Peralta ¶11.<br><br>German also acknowledged that she read and agreed to uphold Gap's dress code and employee appearance guidelines, including the provision allowing her to wear "Gap-like" merchandise on |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| employment, I wore jeans to work with a Gap shirt.  The jeans were not Gap jeans.  The store manager told me that I could not wear the jeans and that I had to purchase an item from the store to wear, or I would have to go home and lose my hours for the day.  I decided to purchase a pair of pants, which I quickly changed into during my break so that I could finish my shift.  A friend of mine wore a shirt to one of her shifts that was not a Gap shirt, and she was sent home.  Even though the manager said she just 'preferred' Gap clothing, we might as well have been told that we had to wear Gap clothing because if we wore anything else there would be an issue, we would have to buy something or go home, so the message was very clear that we should be wearing Gap clothing to avoid these problems." | September 6, 2003.  Geerhart Ex. I. |
| **4.     German, Page 2, lines 16-18, ¶4:**<br><br>"The clothing available at the store changed approximately every four to six weeks, and I and the other employees regularly purchased new clothes to match the 'current' items in the store.  I spent most of my pay checks on Gap clothing." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.**<br><br>In addition to the above-recited objections, German fails to provide any evidence to corroborate her alleged purchases of Gap clothing, and Gap's purchase records confirm that German ***made no purchases from Gap during her employment.***  Peralta ¶11. |

### B.     Declaration of Dawn Gaffey

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| **5.     Gaffey, Page 1, lines 17-18, ¶1**<br><br>"I am over the age of majority and competent to testify.  I have personal knowledge of these facts." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 4: Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;**<br>**Objection 7:  Lay Opinion.**<br><br>The declarant's allegation that she is competent to testify relies upon a distinct and specialized legal meaning, and is a conclusion of law that is undermined by her lack of personal knowledge or foundation for her testimony about other Gap |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| | employees. |
| **6.    Gaffey,, Page 1, lines 19-23, ¶2:**<br><br>"I was employed at the Gap as a sales associate during the holiday season in approximately 2003.  I worked at the Gap's 5th Avenue store in Manhattan.  I worked as a sales associate, earning slightly more than minimum wage.  I applied for the Gap position as a second job, and worked part-time." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;**<br>**Objection 5:  Relevance.**<br><br>Gaffey's declaration must be stricken because apparently she lacks any personal knowledge of these circumstances.  Instead, she worked for Gap for 12 days from December 14, 2002 to December 26, 2002, and was terminated for job abandonment on January 18, 2003.  Geerhart Ex. B.  Gaffey earned $9.00 per hour, over one and a half times the then-minimum wage of $5.15 per hour in New York.  *Id.* |
| **7.    Gaffey,, Page 1, line 24 – page 2, line 6, ¶3:**<br><br>"When I worked at the Gap, employees were required to purchase Gap clothes to wear to work.  During our orientation and hiring process, a manager (who I believe was the store manager) told the employees that we were required to purchase and wear Gap clothing to work.  We also had to wear current items from the current season, or items that were currently available in the store.  The Gap wanted employees to model the clothes for customers and be able to direct them to items that were currently available in the store.  All of the employees followed this policy and purchased Gap clothing to wear to work." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.**<br><br>In addition to the above-recited objections, Gaffey fails to provide any evidence to corroborate her alleged purchases of Gap clothing (and, in fact, the records refute the allegations).  Instead, Gaffey purchased only two items of "current" merchandise.  16 of the 18 items Gaffey purchased from Gap were sale items (designated by a unit price ending in .99), and therefore not "current" merchandise (as Plaintiff herself distinguishes current merchandise, *see* Perry Ex. J, 95:23-96:18); Peralta ¶11, Ex. B.  Gaffey also purchased and returned three sale items.  *Id.* |
| **8.    Gaffey,, Page 2, lines 7-11, ¶4:**<br><br>"On one occasion I got into trouble for not wearing Gap clothing.  I believe I was wearing jeans to work that were not Gap jeans, they were Levi [sic] jeans.  My shirts were Gap shirts.  A manager told me that I could not go out onto the floor like that and I was sent home.  That was the only time I did not wear Gap clothes to work, because I needed the hours and did not want to risk being sent home." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.**<br><br>In addition to the above-recited objections, Gaffey's declaration must be stricken because Gaffey fails to state the basis for her vague, conclusory statement |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| | that she "got into trouble for not wearing Gap clothing."  Gaffey fails to allege that she received disciplinary action for this incident, and fails to provide any corroborating evidence for her conclusion that she was in "trouble." |
| **9.    Gaffey, Page 2, lines 12-16, ¶5:**  "I was frustrated by this policy because I took the Gap position as a second job to earn more money, not so that I could purchase Gap clothes.  I had to purchase three or four outfits at the beginning to get by.  After a couple of months my shifts were cut down to three hours, and I terminated my position with the Gap.  I am fairly certain that I spent more money on clothes than I made at the Gap." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge** **Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;** **Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;** **Objection 5:  Relevance.**  Gaffey's declaration must be stricken because she lacks proper foundation and thus, not surprisingly, the allegation is expressly contradicted by other evidence.  Gap's records confirm that she worked for Gap for 12 days from December 14, 2002 to December 26, 2002 (the day after Christmas), and was terminated for job abandonment on January 18, 2003.  Geerhart Exs. B, C.  In the two days leading up to Gaffey's job abandonment, her shifts exceeded three hours.  *Id*., Ex. C.  Gaffey also earned significantly more in wages than she spent on Gap clothes (just over double).  Geerhart Ex. D; Peralta Ex. B.  In addition, Gaffey's declaration must be stricken because Gaffey fails to provide any evidence to corroborate her alleged purchases of Gap clothing. |

### C.    Declaration of Dienna Howard

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| **10.   Howard, Page 1, lines 17-18, ¶1:**  "I am over the age of majority and competent to testify.  I have personal knowledge of these facts." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;** **Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;** **Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;** **Objection 7: Lay Opinion.**  The declarant's allegation that she is competent to testify relies upon a distinct and specialized legal meaning, and is a conclusion of law that is undermined by her lack of personal knowledge or foundation for her testimony about other Gap employees. |
| **11.   Howard, Page 1, lines 19-22, ¶2:**  "I was employed at the Gap as a sales | **Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded.** |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| associate during the summer of 2002.  I worked at the McKinley Mall in Buffalo, New York.  I earned slightly more than minimum wage." | |
| **12.   Howard, Page 1, line 23 – page 2, line 4, ¶3:**<br><br>"When I worked at the Gap, employees were required to purchase Gap clothes to wear to work.  During our orientation and hiring process, a manager (who I believe was the store manager) told the employees that we were required to purchase and wear Gap clothing to work. We also had to wear current items from the current season, or items that were currently available in the store.  The Gap wanted employees to model the clothes for customers and be able to direct them to items that were currently available in the store.  I and the other employees followed this policy and purchased Gap clothing to wear to work." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 3: A Declaration That Contradicts Deposition Testimony Must Be Stricken or Disregarded;**<br>**Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.** |
| **13.   Howard, Page 2, lines 5-9, ¶4:**<br><br>"I understand that as the class representative in this case, I am responsible to work with the attorneys for the class and participate in the case as necessary.  I also understand that I have duties to the class and the attorneys to pursue this case for the people who are not participating by name.  I am aware of these responsibilities and accept them, and will continue to work with the attorneys to pursue this case for the people who are not participating by name.  I am aware of these responsibilities and accept them, and will continue to work with the attorneys to pursue this case as requested." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 3: A Declaration That Contradicts Deposition Testimony Must Be Stricken or Disregarded;**<br>**Objection 4:  Unreliable Declarations By Disgruntled Former Employees of Gap Should Be Excluded;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay;**<br>**Objection 7: Lay Opinion.**<br><br>Plaintiff's allegation that she understands and is aware of responsibilities to class counsel, and of duties to the purported class and class counsel, relies upon several distinct and specialized legal meanings, and is a conclusion of law that is undermined by her lack of personal knowledge or foundation for her testimony about other Gap employees.<br><br>Plaintiff misconstrues the law by alleging that she has duties and responsibilities *to class counsel*; clearly, she does not understand her obligations. *See also* Defendant Gap's Memorandum of Points and Authorities in Support of Opposition to Motion for Class Certification, pp.16-19. |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| | Moreover, Plaintiff's allegation that she understands her responsibilities and duties is contradicted by her deposition testimony.  Plaintiff testified that she became involved in this lawsuit when she responded to a flier posted in a Buffalo café in 2002 (Perry Ex. 2, 15:3-20:2).  She was not looking for a lawyer when she saw the flier, and had not had contact with any other Gap employees about wearing Gap during their employment (15:13-15; 16:18-21).  When she contacted Carlson & Lynch, she was not seeking legal advice, and only came to believe that Gap owed her money after she spoke to lawyers at the firm (19:13-20:2). |

### D.   Declaration of Esmerelda Maldonado

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 14.  **Maldonado, Page 1, lines 17-18, ¶1:**<br><br>"I am over the age of majority and competent to testify.  I have personal knowledge of these facts." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 7:  Lay Opinion.**<br><br>The declarant's allegation that she is competent to testify relies upon a distinct and specialized legal meaning, and is a conclusion of law that is undermined by her lack of personal knowledge or foundation for her testimony about other Gap employees. |
| 15.  **Maldonado, Page 1, lines 19-22, ¶2:**<br><br>"I was employed at the Gap as a sales associate for several months in approximately 2006.  I worked at the Gap's Oceanside, New York store on Long Island.  I worked as a full-time sales associate earning minimum wage." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 5:  Relevance.**<br><br>Maldonado's foundationless declaration is, not surprisingly, expressly contradicted by other evidence.  Gap's records confirm that the declarant worked for Gap for only 12 days in June 2003. Geerhart Exs. F, G. In addition, Gap's records show that Maldonado was a part-time employee earning $7.50 per hour, higher than the then-minimum wage of $5.15 per hour in New York.  *Id.*, Ex. F. |
| 16.  **Maldonado, Page , line 23 – page 2, line 6, ¶3:**<br><br>"When I worked at the Gap, employees were required to purchase Gap clothes to wear to work.  During our orientation and hiring process, the store manager told the employees that we were required to purchase and wear Gap clothing to | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.**<br><br>Maldonado's defective declaration is expressly contradicted by other evidence.  Maldonado's |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| work  we also had to wear current items from the current season, or items that were currently available in the store. The inventory changed regularly, I do not recall how often, but we had to purchase new clothes to keep up with the "current" merchandise in the store whenever the inventory changed.  All of the employees followed this policy and purchased Gap clothing to wear to work.." | purchase records confirm that she only made one purchase during her employment at Gap, and therefore did not "regularly purchase new clothes to keep up with the "current" merchandise in the store."  Peralta ¶11, Ex. A.  Maldonado bought five items, including two that were on sale (and therefore not "current" merchandise). *Id.*<br><br>Maldonado acknowledged that she read, understood, and agreed to comply with the Gap Store Dress Code policy, which allowed employees to wear non-Gap merchandise.  *Id.*, Ex. E.<br><br>In addition to the above-recited objections, Maldonado's declaration must be stricken because Maldonado fails to provide any evidence to corroborate her alleged purchases of Gap clothing. |
| 17.    **Maldonado, Page 2, lines 7-11, ¶4:**<br><br>"I tried to wear non-gap clothing to work, even clothing that looked exactly the same as Gap clothing and did not have any other retail logo on it.  The managers told me that I would not be able to work in non-Gap clothing.  This policy was enforced by all of the managers in the store, and they knew immediately if you were wearing clothing that was not Gap clothing currently available in the store." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.**<br>In addition to the above-recited objections, Maldonado's declaration must be stricken because Maldonado fails to provide any evidence to corroborate her alleged purchases of Gap clothing. |
| 18.    **Maldonado, Page 2, lines 12-21, ¶5:**<br><br>"I asked the managers why we had to purchase Gap clothing to wear to work.  They said it was "mandatory."  When I explained that some of the employees, including me, did not have the money to buy clothes, they told me that they wanted employees to show off the clothes to customers so that they could direct customers to clothes that the Gap was currently carrying in the store.  I had to take money out of savings to make my first purchase of clothes at the Gap so that I could start my job.  After that, I paid for the clothing out of my Gap wages.  I did not even like the clothing because I am very petite and the clothing was too big for me, so I purchased this | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 5:  Relevance;**<br>**Objection 6:  Hearsay.**<br><br>Maldonado's declaration must be stricken because one of its allegations is expressly contradicted by other evidence of record.  Maldonado's purchase records show that she only made one purchase during her employment at Gap.  Peralta ¶11, Ex. A.  Therefore, Maldonado did not use her wages to make any subsequent purchases at Gap, as she claims in her declaration.  In addition to the above-recited objections, Maldonado's declaration must be stricken because Maldonado fails to provide any evidence to corroborate her alleged purchases of Gap clothing. |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| clothing only to wear to work.  I would bring a change a clothes in the car to change out of the Gap clothes after my shift." | |
| **19.   Maldonado, Page 3, lines 1-4, ¶6:**<br><br>"I was hoping to make enough money in wages to compensate for the purchases I was required to make if I worked long enough at the Gap.  Unfortunately, my mother became ill and I had to quit my position to take care of her.  I believe that I spent more at the Gap on clothes than the Gap paid me in wages." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 5:  Relevance.**<br><br>In addition to the above-recited objections, Maldonado's declaration must be stricken because Maldonado fails to provide any evidence to corroborate her alleged purchases of Gap clothing. |

### E.    Declaration of Anne-Marie Sargent

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 20.   **Sargent, Page 2, lines 16-19, ¶5, Exhibit C:**<br><br>"Exhibit C to this declaration is a true and correct copy of the Second Amended Class Action Complaint and Order Granting Preliminary Approval of Class Action Settlement filed in San Francisco Superior Court in the Case of Boleyn v. Gap, Inc., et al., Cause No. CGC-03-417075, produced by Defendant in this case." | **Objection 5:  Relevance**<br><br>Counsel's Exhibit C purports to be an Order of Court originating in a separate case filed and litigated in San Francisco Superior Court, in a completely separate action against Defendant and an additional co-defendant, involving a different plaintiff, class definition, fact pattern, applicable law, and class counsel. |
| 21.   **Sargent, Page 2, lines 8-15, ¶4**<br><br>"In the course of discovery in this matter, Plaintiff requested purchase records for all of the Gap's New York employees. By agreement between counsel, the original production of such records was limited to records for 200 randomly selected employees for specified months. In response to this agreed production, the Gap produced hundreds of pages of purchase records. Exhibit A reflects purchases made by five employees (whose names have been redacted for confidentiality reasons) at different Gap stores in New York during the month of August 2006. The other records produced reflect similar employee purchases." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 7:  Lay Opinion;**<br><br>Five purchase records hand selected by Plaintiff's counsel are not representative of the purchase records of 4,700 employees (a sampling agreed upon by the parties) from over 40,000 employees. Perry ¶35. Plaintiff's counsel does not describe how she determined that the five records were representative of the class, nor her qualifications for making such an assessment. |

| MATERIAL OBJECTED TO | GROUNDS FOR OBJECTION |
|---|---|
| 20.  **Sargent, Page 2, lines 16-19, ¶5, Exhibit C:**<br><br>"Exhibit C to this declaration is a true and correct copy of the Second Amended Class Action Complaint and Order Granting Preliminary Approval of Class Action Settlement filed in San Francisco Superior Court in the Case of Boleyn v. Gap, Inc., et al., Cause No. CGC-03-417075, produced by Defendant in this case." | **Objection 5:  Relevance**<br><br>Counsel's Exhibit C purports to be an Order of Court originating in a separate case filed and litigated in San Francisco Superior Court, in a completely separate action against Defendant and an additional co-defendant, involving a different plaintiff, class definition, fact pattern, applicable law, and class counsel. |
| 21.  **Sargent, Page 2, lines 8-15, ¶4**<br><br>"In the course of discovery in this matter, Plaintiff requested purchase records for all of the Gap's New York employees. By agreement between counsel, the original production of such records was limited to records for 200 randomly selected employees for specified months. In response to this agreed production, the Gap produced hundreds of pages of purchase records. Exhibit A reflects purchases made by five employees (whose names have been redacted for confidentiality reasons) at different Gap stores in New York during the month of August 2006. The other records produced reflect similar employee purchases." | **Objection 1:  Lack of Foundation, Lack of Personal Knowledge;**<br>**Objection 2:  Vague, Overbroad, Conclusory and/or Speculative Statements;**<br>**Objection 7:  Lay Opinion;**<br><br>Five purchase records hand selected by Plaintiff's counsel are not representative of the purchase records of 4,700 employees (a sampling agreed upon by the parties) from over 40,000 employees. Perry ¶35. Plaintiff's counsel does not describe how she determined that the five records were representative of the class, nor her qualifications for making such an assessment. |

Dated: October 15, 2009

LYNNE C. HERMLE
JESSICA R. PERRY
JULIA C. RIECHERT
Orrick, Herrington & Sutcliffe LLP


_____
/s/
Jessica R. Perry
Attorneys for Defendant
GAP, INC.