IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DIENNA HOWARD, on behalf of herself and a class of similarly situated employees,

    Plaintiff,

v.

GAP, INC.,

    Defendant.

No. C 06-06773 WHA

**ORDER DENYING MOTION FOR CLASS CERTIFICATION AND VACATING HEARING**

## INTRODUCTION

This action challenges the alleged policy of defendant Gap, Inc. to require employees to purchase and wear Gap clothing. Plaintiff Dienna Howard now moves for class certification. For the reasons stated below, plaintiff's motion is **DENIED**.

## STATEMENT

Defendant Gap, Inc. is a clothing retailer who sells clothing and accessories under its own brand name in its retail stores. There are at least seventy-five Gap stores in New York, the situs of the proposed class action. Usually, each Gap store has a general manager. Depending on the size of the store, there may also be a store manager, assistant manager, and/or shift supervisor. In addition, Gap employs sales associates. Besides the general manager, the aforementioned employees were compensated on an hourly basis and were considered "non-exempt" employees.

In July 2002, plaintiff Dienna Howard worked briefly as a sales associate at a Gap store in the McKinley Mall located in Blasdell, New York. Plaintiff alleges that during her orientation a

1  manager (who she believes was a store manager) told her she had to purchase Gap clothes and
2  wear them to work. (This was her only communication with a Gap manager about the dress
3  code.) Employees were allegedly required to wear Gap clothing from the current season or items
4  that were currently available in the store.

5      In at least 2000 and 2001, district managers used a hiring/orientation document that stated
6  (Sargent Exh. 30 at 1090):

> Employee appearance is important to our overall business strategy.
> All employees should wear clothing that is reflective of the Gap
> brand style.
>
> •     You are encouraged to wear Gap merchandise; especially
>      the franchise merchandise that the Gap is famous for, such
>      as jeans and khakis and activewear.
>
> •     You are also encouraged to wear merchandise that is
>      currently sold in your store. Wearing past season
>      merchandise can mislead your customers.

When hired, employees were required to sign an employee appearance agreement and dress code commitment. In approximately 2002, when plaintiff worked at Gap, the dress code policy stated (Sargent Exh. 28 at 998):

> Our Brand Standards state that Gap hires exceptional employees
> that exemplify the brand through their actions, attitudes and
> appearance. Gap is a fashion company and your dress and
> professional attitude are an important part of our overall customer
> service and marketing strategies. You are provided a monthly
> discount and special purchase offers each season to help ensure that
> your clothing and accessories are always reflective of our brand.
> We encourage you to take advantage of these benefits to build your
> working wardrobe.

Over the last nine years, Gap has had at least fourteen different versions of its dress code policy. The following discusses the relevant iterations and revisions. In 2000 and 2001, the policies provided that "all employees should wear clothing that is reflective of the Gap brand style" (Perry Exh. 4 at 1090; Exh. 6 at 1108). In February 2001, the policy was changed to state that "[e]mployees are encouraged to wear Gap or Gap-like merchandise" (Perry Exh. 5 at 1097). Gap again revised the dress code policy in November 2002 to state that "[e]mployees are required to wear Gap or Gap-like merchandise that is reflective of the current season" (Perry Exh. 8 at 1115). In August 2003, the policy was changed to remove "reflective of the current season" and

2

1   this language has not appeared in the dress code policy since then (Perry Exh. 10). Another
2   iteration, in March 2006 (before this lawsuit), expressly stated "[e]mployees are not required to
3   purchase or wear Gap Brand merchandise" (Perry Exh. 14 at 1136). In October 2006, a revision
4   removed any reference to "Gap or Gap-like" clothing and since then that language has not been
5   included in the dress code policy.

Plaintiff filed her original complaint in this action on October 31, 2006, and soon thereafter filed a first amended complaint. Defendant filed a motion to dismiss, which was granted with leave to amend. Plaintiff's second amended complaint averred that Gap's purported policy of requiring employees to purchase and wear Gap clothing violated New York Labor Law § 193 prohibiting unauthorized deductions from wages and New York Labor Law § 198-b prohibiting kickbacks to employers. That complaint was also dismissed for failure to plead a claim under either section. Plaintiff appealed. The Ninth Circuit reversed and remanded, and the order stated it could not say that under "Section 198-b or Section 193 that Howard could prove no set of facts in support of her claim that would entitle her to relief." *Howard v. Gap, Inc.*, No. 07-15913, 2009 U.S. App. LEXIS 6364, at *2 (9th Cir. Feb. 13, 2009).[1]

Plaintiff now moves for class certification. She seeks to certify the following class:

> All non-exempt employees who worked in any of Gap, Inc.'s stores
> in the State of New York from October 31, 2000 to the present.

The putative class purportedly consists of over 35,000 people.

### 1. MOTION FOR CLASS CERTIFICATION.

In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). Although a district judge may not investigate the likelihood of prevailing on the merits, he or she is at liberty to consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23. The party seeking class certification bears the burden of

---

[1] At the oral argument, the Ninth Circuit expressed skepticism regarding whether this plaintiff could obtain class certification. This is discussed in more detail below.

3

1  showing that each of the four requirements of Rule 23(a) and at least one of the requirements of
2  Rule 23(b) are met. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508–09 (9th Cir. 1992).
3        For a named plaintiff to obtain class certification, the district court must find:
4  (1) numerosity of the class; (2) common questions of law or fact predominate; (3) the named
5  plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect
6  the interests of the class. Here, plaintiff seeks to certify the class under Rule 23(b)(3).
7  Certification under Rule 23(b)(3) requires that a district court find "that the questions of law or
8  fact common to class members predominate over any questions affecting only individual
9  members, and that a class action is superior to other available methods for fairly and efficiently
10 adjudicating the controversy."

      **A.**    **Commonality and Predominance**.

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact common to the class." Rule 23(a)(2) does not require each member in a class to have identical factual and legal issues surrounding their claim. "The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The predominance requirement of Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2). The Ninth Circuit has stated:

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

*Hanlon*, 150 F.3d at 1022 (internal citations omitted).

In the instant putative class action, defendant contends that individual issues predominate, mainly because what was orally told to new recruits would have varied from store to store, assuming for the sake of argument that store managers deviated from the written policy. Plaintiff

4

asserts two claims based on New York statutes. Her first claim is asserted under New York Labor Law § 198-b, which provided, in pertinent part:

> Whenever any employee who is engaged to perform labor shall be promised an agreed rate of wages for his or her services, be such promise in writing or oral, or shall be entitled to be paid or provided prevailing wages or supplements pursuant to article eight or nine of this chapter, it shall be unlawful for any person, either for that person or any other person, to request, demand, or receive, either before or after such employee is engaged, a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment. Further, any person who directly or indirectly aids, requests or authorizes any other person to violate any of the provisions of this section shall be guilty of a violation of the provisions of this section.

N.Y. LABOR LAW § 198-b (2009). Plaintiff's Section 198-b claim stems from an allegation that she had to "kickback" a portion of her wages to Gap because she was required to purchase Gap clothing to wear at work. According to plaintiff, there are common factual and legal questions as to this claim, including: (1) whether Gap had and enforced a policy requiring employees to purchase Gap clothing; and (2) whether such a policy, if proved, constituted an illegal kickback under Section 198-b.

Plaintiff's other claim is based on New York Labor Law § 193, which provided:

> 1. No employer shall make any deduction from the wages of an employee, except deductions which:
>
> a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
>
> b. are expressly authorized in writing by the employee and are for the benefit of the employee; provided that such authorization is kept on file on the employer's premises. Such authorized deductions shall be limited to payments for insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee.
>
> 2. No employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section.

5

N.Y. LABOR LAW § 193 (2009). Plaintiff contends that there are common questions of law and fact regarding her Section 193 claim. According to plaintiff, these include the following: (1) whether Gap's dress code policy required employees to buy its clothes; and (2) whether purchases made pursuant to that policy, if proved, constituted illegal payments by separate transaction under Section 193.

Common to both claims is the question of whether Gap had a policy requiring employees to purchase and wear Gap clothes. As stated, the written policy plaintiff cites only said that employees are "encouraged" to wear Gap clothing; it did not say "required." Plaintiff acknowledges that her claim is predicated on *oral* instructions, but she argues that she received these instructions as part of a "routinized orientation that itself conformed to the written material distributed to her at that orientation" (Reply Br. 10–11).

If there were, for example, a standardized written pitch that managers were supposed to give, then this would constitute a common method of class-wide proof, but the record shows — indeed, plaintiff's own record shows — this was not so. Plaintiff's declaration stated that, during her orientation, "a manager (who I believe was the store manager) told the employees that we were required to purchase and wear Gap clothing to work" (Howard Decl. ¶ 3). Similarly, two other declarants stated the following occurred during their orientations: "the store manager told the employees that we were required to purchase and wear Gap clothing to work" (Maldonaldo Decl. ¶ 3); and "a manager (who I believe was the store manager) told the employees that we were required to purchase and wear Gap clothing to work" (Gaffey Decl. ¶ 3). In sharp contrast, another one of plaintiff's declarants stated that during orientation, "the store manager told us that she 'preferred' if we wear Gap clothes to work" (German Decl. ¶ 3). Significantly, the latter shows that not all employees were told that they were *required* to wear Gap clothing. Thus, there are individual variations in the supposed recollections of oral statements allegedly made, even by plaintiff's lights. More than that, Gap has provided over 180 declarations from former and (mostly) current employees stating that they did *not* understand that they were required to wear Gap clothing and that they wore other brands.

6

*There is no common method of proof*. There was no common script. Each class member would have his or her own individual story to tell. This goes to liability, not damages. Clearly individual issues would overwhelm any common issues. This is a show stopper.

The absence of a common class-wide method of proof goes to the core question: whether employees were compelled to use their wages to purchase and wear Gap clothing as a condition of their employment. A determination of this issue would require, at a minimum, individualized inquiries into what each manager instructed. In addition, there would be a question of how each employee interpreted the instruction, whether each employee relied on the instruction and in fact purchased and wore Gap clothing to work. It is not enough for the class representative to testify as to his or her story. There must be a common method of proof that tends to establish the required elements of liability as to all class members.

In sum, resolution of the claims will require inquiry into the status of individual employees. Such individualized inquires would not serve to "enhance efficiency and further judicial economy," a principal purpose behind Rule 23 class actions. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) (affirming denial of class certification when "[p]laintiffs' claims require[d] a fact-intensive, individual analysis of each employee's exempt status"); *see also In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (reversing certification of class action when "a fact-intensive inquiry into each potential plaintiff's employment situation" was required).

Although citing numerous wage-and hour-decisions where a class was certified, plaintiff acknowledges that she was unable to find any decisions certifying a class in a situation like the current one — involving a sales associate and "required" clothing purchases (Br. 13). Plaintiff primarily relies on *Kurihara v. Best Buy Co.*, No. C 06-1884, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 29, 2007) (Patel, J.). In *Kurihara*, a class was certified when there was a formal, written company-wide policy regarding the challenged inspection of employees that allegedly applied to all employees. That written standardized policy supplied a class-wide common method of proof.

7

Plaintiff also heavily relies on *Wren v. RGIS Inventory Specialists*, No. C 06-5778, 2009 U.S. Dist. LEXIS (N.D. Cal. Feb. 6, 2009)(Spero, J.). *Wren* certified classes with claims arising out of donning-and-waiting time and unpaid-travel time but decided to not certify a class with respect to claims based on missed meal breaks. The former were certified because official policy documents supported those claims, *i.e.*, there was a common method of proof. The district court declined to certify the latter claim because there was *not* an explicit policy to which missed meals could be attributed. So, there would be individualized inquiries regarding the reason the meal break was not taken and whether or not it was waived.

In the instant action, there was not a *written* company-wide policy *requiring* employees to wear Gap clothing. Rather, plaintiff must fall back on supposed oral instructions individual managers made to individual sales associates. As stated, plaintiff's own evidence shows these conversations differed. And "a mere allegation of a company-wide policy does not compel class certification." *Kurihara*, 2007 U.S. Dist. LEXIS 64224, at *29. Again, these individual inquiries go to liability, not just damages. Because individual liability inquiries will predominate, it is not necessary to delve into the many individualized inquires that would be necessary for damages. This alone is dispositive. But there are additional reasons certification must be denied.[2]

### B. Typicality.

The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claims are typical if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiff, however, has not shown that her claim is typical. Over the proposed nine-year class period, Gap's dress code policy went from stating that employees are "encouraged" to wear Gap clothing to saying employees are "not required" to purchase or wear Gap clothing

---

[2] As to damages, whether there is a policy or not, plaintiff's claims would still require an inquiry into the variety of reasons each employee may have purchased Gap clothing. It could have been to wear it during non-working hours, as gifts for their family, and a host of other possibilities. Such purchases would not fall under the claims at issue and thus would not support damages. It would be very difficult, if not impossible to determine, on class-wide proof, whether all employees were harmed by some Gap managers' instructions.

8

(Perry Exh. 4 at 1090; Exh. 14 at 1136). In fact, Gap changed its written dress code policy fourteen times. Plaintiff was subject to only one of these policies.

Furthermore, this action is based on the allegation that employees had to *purchase* Gap clothes that were "*current items* from the *current season*, or items that were *currently* available in the store" (Howard Decl. ¶ 3) (emphasis added). *Here, plaintiff only worked twelve hours*. She did not work at Gap long enough to be subject to this part of the policy. She would not have seen the seasons change. Thus, she would have no way of knowing if this part of the alleged policy was enforced.

This action is also based on the assertion that employees had to *wear* Gap clothing to work. For two of her four shifts, plaintiff did not wear any Gap clothing. She only made three purchases. She never wore some of those items to work at Gap, never returned them and continued to wear them even after her employment.

On appeal of the earlier motion to dismiss, Judge Marsha Berzon highlighted her concerns with this plaintiff during appellate oral argument (Hermle Exh. 7 at 4–5,15–16):

> To be frank, the other problem I have with your case in the long run is your plaintiff. Whether you're really going to be able [to] certify a class based on this plaintiff who worked for 12 hours and who never actually, therefore, had to engage in the continuing purchase of Gap clothing that you allege occurred and it seems to me you're going to have a lot of problem proving that that [sic] even is a condition because she really wasn't subject to it and so on.

 \*    \*    \*

> You also allege that they had to keep it current, which I understand, which as I say I have problem with your plaintiff, but the notion being that they had to buy it. They had to wear the GAP clothes that were in the store at the time, essentially.

 \*    \*    \*

> If I may, I'd like to repeat that I have the biggest problem with the state of the complaint given the circumstances of the plaintiff. Now why shouldn't we say that this plaintiff isn't in any position to complain about any continuing obligation to pay to buy more clothes because she didn't have to do that and indeed it isn't at all clear that she needed to, that she ever had an opportunity to wear any of the clothes that she actually bought. She could have returned them. She's in a peculiar position.

 \*    \*    \*

9

> I understand, sir, I think you could have come up with a better
> plaintiff. If there's really a problem out there, you'd think there
> would be people trying to get into this case and make allegations
> that are more substantial.

That comment was made eight months ago and in the interim no other plaintiff has been advanced to solve these problems. Accordingly, typicality has not been satisfied.[3]

Due to the predominance and typicality issues that militate against class certification, this order does not find it necessary to address the other factors under Rule 23.

### 2. DEFENDANT'S MOTION TO STRIKE.

Gap filed a motion to strike evidence submitted by plaintiff in support of her motion for class certification. Gap contends that the declarations of plaintiff Dienna Howard, Dawn Gaffey, Jenae German, and Esmeralda Maldonaldo should be excluded because plaintiff: (1) failed to disclose the names of these declarants in her initial disclosures under Rule 26(a)(1) and Rule 26(e); and (2) the declarations do not establish a proper foundation, are overbroad, are hearsay and are not supported by personal knowledge. Rule 37 provides for the exclusion of undisclosed evidence as a sanction for violating Rule 26. Undisclosed evidence should not be excluded "if the parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

In her June 2009 amended initial disclosures, plaintiff vaguely identified "all employees of Gap Inc. Stores" and "co-workers and managers" as persons with knowledge (Hermle Exh. 9). She did not identify any of the three declarants by name until the motion for class certification was filed. Plaintiff contends that she did not know the identity of the declarants in June 2009, when she served her amended initial disclosures. According to plaintiff, on August 28, 2009, Gap produced a sampling of 3,700 names and addresses of putative class members. Soon thereafter

---

[3] In addition, there is a conflict of interest among proposed class members. The proposed class definition refers to "all non-exempt employees." This includes managers, such as store managers, who allegedly instructed employees that Gap clothes were required (an instruction Gap contends violates their policy). Thus, plaintiff seeks to represent not only non-exempt managers who purportedly gave these instructions but also employees who allegedly relied on them. The managers allegedly have been a part of the practices they would now be challenging as class members. Thus, the interests of plaintiff and the managers are not the same. *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members").

10

plaintiff contacted the current declarants that were listed in that production. Plaintiff asserts that the witnesses were included in defendant's amended initial disclosures in September 2009 and October 2009. While plaintiff improperly failed to disclose the names of the individual declarants once they became known, this order finds that this was harmless. Gap was in possession of the contact information in its own disclosures. To the extent relied on, the declarations merely echo plaintiff's claims for the most part (with the exception of German's declaration). *See Mowdy v. Beneto Bulk Transp.*, No. 06-5682, 2008 U.S. Dist. LEXIS 26233, *10–11 n.5 (N.D. Cal. Mar. 31, 2008) (Patel, J.) (stating that "[t]here is no link, however, between plaintiffs' omission and any particularly damaging result to defendants, and little would be served by striking the declarations because they do no more than echo the named plaintiffs' claims").

Gap also argues that the declarations contain hearsay. The declarations submitted with plaintiff's motion refer to what managers "told" them. This is not hearsay. It is an admission by a party opponent under Rule 801(d)(2) as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Plus, it is included merely "to prove up the transaction," *i.e.*, the verbal act and is not hearsay in the first place.

This order does not rely on the other parts of the declarations that defendant objects to on numerous other grounds. So, those objections are moot. Accordingly, defendant's motion to strike is **DENIED WITHOUT PREJUDICE**.

## CONCLUSIONS

For the foregoing reasons, plaintiff's motion for class certification is **DENIED**. Finding no argument necessary, the hearing on this motion set for November 5, 2009, is hereby **VACATED**. Although a class has not been certified, this action shall proceed as to plaintiff's individual claims in accord with the deadlines previously set in the case management order.

**IT IS SO ORDERED.**

Dated: October 29, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11